UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RICKY DEAN CLARK, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 1:20-cv-02761-JMS-KMB |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**ORDER DENYING MOTION FOR RELIEF PURSUANT TO 28 U.S.C. § 2255
AND DENYING CERTIFICATE OF APPEALABILITY**

In 2018, Ricky Clark pled guilty to 27 counts of child exploitation, coercion, and pornography offenses. He is serving a life sentence in federal prison. Mr. Clark asks the Court to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255, asserting that he was convicted and sentenced without effective legal representation. For the following reasons, Mr. Clark's motion is denied, this action is dismissed with prejudice, and no certificate of appealability will issue.

### I. The § 2255 Motion

A motion pursuant to 28 U.S.C. § 2255 is the presumptive means by which a federal prisoner can challenge his conviction or sentence. *See Davis v. United States*, 417 U.S. 333, 343 (1974). A court may grant relief from a federal conviction or sentence pursuant to § 2255 "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Relief under this statute is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878-79 (7th

Cir. 2013) (citing *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996); *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997)).

## II. Background

In April 2016, the National Center for Missing and Exploited Children received information accusing Mr. Clark of having inappropriate online interactions with multiple girls, including creating child pornography and engaging in unlawful sexual activity. *United States v. Clark*, No. 1:16-cr-00219-JMS-TAB-1 ("crim. dkt."), dkt. 39-7. This information reached the Indiana State Police (ISP) and the Indianapolis Metropolitan Police Department (IMPD) by June 2016. Crim. dkt. 39-3 at 4.

On June 13, 2016, ISP Detective Ginger Marshall and IMPD Detective Kurt Spivey visited Mr. Clark's home. *Id.* Thy questioned Mr. Clark regarding his online activities and relationships and suspected he was in possession of child pornography. *See generally* crim. dkt. 39-2. When Mr. Clark began to destroy a cell phone thought to contain evidence, the detectives arrested him and obtained a warrant to search the residence. *Id.*; crim. dkts. 39-3, 39-4.

The detectives obtained a warrant and completed a search that afternoon. Crim. dkts. 39-3, 39-4. In August 2016, the ISP Cyber Crime Unit completed a forensic examination of eight devices. Crim. dkt. 39-5. They discovered child pornography and incriminating communications on two cell phones, a laptop, and an external hard drive. *Id.*[1]

Mr. Clark was charged in Hendricks County before being indicted in this Court in October 2016. Crim. dkt. 14. Joseph Cleary and Gwendolyn Beitz represented him throughout the action.

---

[1] Although the United States' extensive descriptions may suggest otherwise, *see* dkt. 14 at 1–4, the details of those images and communications are immaterial to this § 2255 action, which concerns only the adequacy of Mr. Clark's legal representation.

About a year into the case, Mr. Clark moved to suppress evidence seized from his residence. Crim. dkts. 35, 62. He contended that the search stemmed from statements elicited in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). Judge Lawrence denied the motion on April 4, 2018. Crim. dkt. 65.

Following Judge Lawrence's retirement, the undersigned judge was assigned to the case in June 2018. Crim. dkt. 66. Two months later, Mr. Clark agreed to plead guilty to all 27 charges. Crim. dkt. 74. The parties did not agree to a specific sentence or recommendation. *Id.* at ¶ 11. Mr. Clark retained his rights to appeal his sentence and the denial of his suppression motion. *Id.* at ¶¶ 2, 66.

The Court accepted Mr. Clark's guilty plea on August 8, 2018, and imposed a life sentence on February 6, 2019. Crim. dkts. 76, 95. On direct appeal, the Seventh Circuit affirmed the denial of the suppression motion. *United States v. Clark*, 798 F. App'x 5 (7th Cir. 2020).

Mr. Clark's § 2255 motion asserts eight grounds for relief. Nearly all concern the effectiveness of Ms. Beitz and Mr. Cleary and, specifically, whether they should have raised challenges to warrant authorizing the search of his home.

### III. Discussion

A § 2255 movant claiming ineffective assistance of counsel bears the burden of showing (1) that counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688–94 (1984); *Resnick v. United States*, 7 F.4th 611, 619 (7th Cir. 2021). If a petitioner cannot establish one of the *Strickland* prongs, the Court need not consider the other. *Groves v. United States*, 755 F.3d 588, 591 (7th Cir. 2014).

To assess counsel's performance, the Court must "apply an objective standard of reasonableness considering all the circumstances." *Bridges v. United States*, 991 F.3d 793, 803 (7th Cir. 2021). "When a petitioner alleges that counsel was ineffective for failing to move to suppress evidence," he must "'prove the motion was meritorious.'" *Long v. United States*, 847 F.3d 916, 920 (7th Cir. 2017) (quoting *United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005)). "And when the purported deficiency is based on a failure to investigate," he must "allege what the investigation would have produced." *Long*, 847 F.3d at 920 (internal quotations omitted).

On the prejudice prong, a petitioner "must show that but for counsel's errors, there is a reasonable probability that the result would have been different." *Perrone v. United States*, 889 F.3d 898, 908 (7th Cir. 2018) (cleaned up). Because Mr. Clark pled guilty, he "'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Anderson v. United States*, 981 F.3d 565, 576 (7th Cir. 2020) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

It is fundamental that the § 2255 movant faces the burden of demonstrating both deficient performance and prejudice. *See, e.g.*, *Williams v. United States*, 879 F.3d 244, 249 (7th Cir. 2018) ("To demonstrate prejudice, Williams had the burden to show a reasonable probability" of a different outcome "but for the failure by his counsel."); *Faucett v. United States*, 872 F.3d 506, 509 (7th Cir. 2017) ("Under . . . *Strickland* . . . , it was Faucett's burden to show that his attorney's performance was deficient and that he suffered prejudice as a result."); *Blake v. United States*, 723 F.3d 870, 879 (7th Cir. 2013) ("A party asserting ineffective assistance of counsel bears the burden of establishing" both deficient performance and prejudice.); *Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993) ("Because counsel is presumed effective, the petitioner bears a heavy burden to prove that his counsel was ineffective and that his defense was actually prejudiced.");

4

*United States v. Springs*, 988 F.2d 746, 749 (7th Cir. 1993) ("Further proceedings on this subject would be a waste of time, because Springs has no prospect of establishing the 'prejudice' that is an element of his burden under the sixth amendment."); *United States v. Davenport*, 986 F.2d 1047, 1049 (7th Cir. 1993) ("[T]he burden of both proof and persuasion is" the movant's).

A.  *Miranda* **Challenge**

Mr. Clark first argues that counsel erred by seeking to suppress evidence based on *Miranda*. Dkt. 1-1 at 8. Although that motion was unsuccessful, Mr. Clark has not articulated why he would have been more likely to proceed to trial had counsel never pursued the *Miranda* motion. This argument includes no articulation of prejudice and is therefore a non-starter.

B.  **Challenges to Probable Cause Affidavit**

Mr. Clark asks the Court to find that competent counsel would have moved to suppress evidence obtained from his home because of two statements in Detective Spivey's probable cause affidavit.

"It is established law . . . that a warrant affidavit must set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter." *Franks v. Delaware*, 438 U.S. 154, 165 (1978). The Fourth Amendment does not require that "every fact recited in the warrant affidavit is necessarily correct," but it does require that "the information put forth" in the affidavit "is believed or appropriately accepted by the affiant as true." *Id.* Under *Franks*:

> evidence recovered from a search must be suppressed if a defendant proves by a preponderance of the evidence that: (1) the affidavit contained material false statements or omissions; (2) these false statements or omissions were made with deliberate or reckless disregard for the truth; and (3) these false statements or omissions were necessary to a finding of probable cause.

*United States v. Gregory*, 795 F.3d 735, 743 (7th Cir. 2015).

Mr. Clark contends that the following statement from Detective Spivey's affidavit violates *Franks*' requirements: "When asked about illegal images, Clark indicated that there were illegal images on his phone, which be described as nude young girls, under the age of 16." Crim. dkt. 39-3 at 4. It is true that Mr. Clark never said to Detective Spivey, "There are illegal images on my phone of nude girls under the age of 16." But Detective Spivey's representation in the warrant affidavit was a fair characterization of statements Mr. Clark actually made.

Mr. Clark made several statements indicating he may have pictures of girls 16 years old or younger on his phone. He said his phone contained "[p]ictures of probably girls that lied to me about their ages and stuff." Crim. dkt. 39-2 at 26:16–19. He stated, "With the images I have deleted in my files, I'm probably going to go to prison." *Id.* at 33:1–3. When asked if he had "pictures of young girls" on his phone, Mr. Clark answered, "Deleted, but yeah." *Id.* at 33:9–11. And when asked if the girls were "under the age of sixteen," Mr. Clark answered only that he was "not sure exactly how old they were, the ones that have lied to me." *Id.* at 35:21–36:1.

Further, the context of the discussion made it fair to infer that Mr. Clark was referring to images of nude girls. It is difficult to understand why Mr. Clark would worry about going to prison for pictures of fully clothed girls or feel compelled to delete them. *Id.* at 11:12–20, 33:1–3. Meanwhile, the detectives made clear that their investigation concerned "child pornography," *id.* at 16, and that they were concerned with were pornographic images, *id.* at 30:15–20.

It would have been deliberately and recklessly untruthful for Detective Spivey to write in his probable cause affidavit, "Ricky Clark said, 'I have nude photos of girls younger than 16 on my phone.'" Mr. Clark never made that statement. However, while discussing a child pornography investigation, Mr. Clark stated that he had pictures on his phone of young girls that he believed would result in him going to prison. Given his statements and their context, it was not deliberately

6

or recklessly untruthful for Detective Spivey to attest that "Clark indicated that there were illegal images on his phone, which be described as nude young girls, under the age of 16." Crim. dkt. 39-3 at 4. Mr. Clark has not established that a motion to suppress evidence based on this statement would have prevailed, and so he cannot demonstrate that his attorneys failed him by declining to pursue it.

Mr. Clark also contends that counsel should have sought relief under *Franks* because Detective Spivey wrote in his affidavit that he "had probable cause to believe" that "illegal contraband exist[ed] on" Mr. Clark's phone. Dkt. 39-3 at 5. Mr. Clark correctly notes that the Constitution designates the magistrate the exclusive, independent arbiter of probable cause for determining whether a warrant should issue. *United States v. Taylor*, 63 F.4th 637, 648 (7th Cir. 2023). But an officer's request for a warrant is inherently an assertion that probable cause exists. Mr. Clark has not identified any basis—and the Court is not aware of one—for finding that an officer violates the Fourth Amendment by including the phrase "probable cause" in his affidavit. His attorneys were not deficient because they did not cite this as grounds for invalidating the warrant.

C. **Failure to Disclose Evidence**

Mr. Clark contends that counsel erred by failing to recognize that the government may not have disclosed the entirety of Detective Spivey's probable cause affidavit. Dkt. 1-1 at 4. Although Mr. Clark refers to an exhibit, *id.*, the Court is unable to locate it. Regardless, the government included what appears to be a complete, uninterrupted version of Detective Spivey's affidavit with its response to the motion to suppress. Dkt. 39-3. There appears to be no factual basis for Mr. Clark's contention that the government failed to disclose evidence.

7

### D.   Ownership of Phone

Mr. Clark next argues that counsel performed deficiently by failing to raise a *Franks* challenge based on Detective Spivey's deposition testimony that he did not know whether the devices sized from the scene belonged to Mr. Clark. Dkt. 1-1 at 4. This testimony, he argues, would have alerted a competent attorney that Detective Spivey "either lied in his deposition or lied in the affidavit when he asked the magistrate for permission to seize 'Clark's phone.'" *Id.*

This argument misstates both Detective Spivey's deposition testimony and the authority he sought through. Detective Spivey stated in his deposition that he could not identify the owner or primary user of any device seized because he did not ask at the scene and because he did not review any data extracted from the devices. Dkt. 14-1 at 46–48. However, he clarified that "both phones were in Ricky Clark's room and he physically touched or handed both phones." *Id.* at 47. Further, Detective Spivey did not seek permission to seize "Clark's phone," *see* dkt. 1-1 at 5, but rather asked for authorization to "search for and seize . . . "[a]ny and all" devices at Mr. Clark's residence thought to contain child pornography or evidence of child molestation or exploitation, crim. dkt. 39-3 at 2. In short, Mr. Clark's argument rests on a faulty factual premise and does not establish deficiency by defense counsel.

### E.   Omission of Interview Recording

Mr. Clark asks the Court to find that his attorneys failed him by declining to seek suppression on grounds that Detective Spivey did not present the recording of Mr. Clark's interview to the magistrate. "Under *Franks*, a defendant must first make a substantial preliminary showing that law enforcement knowingly and intentionally, or with reckless disregard for the truth, made either a false material statement or a *material and deceptive* omission in the underlying warrant." *Taylor*, 63 F.4th at 649 (emphasis added). "In a warrant affidavit, law enforcement 'need

8

not provide every detail of an investigation, nor describe every wrong turn or dead end they pursued. But they may not deliberately omit information the magistrate needs to assess fairly the issue of probable cause.'" *United States v. Taylor*, 63 F.4th 637, 653 (7th Cir. 2023) (quoting *United States v. McMurtrey*, 704 F.3d 502, 513 (7th Cir. 2013)). For example, an officer who intentionally omits information about an informant's relationship with the defendant that may call the informant's credibility into doubt may have committed a material, deceptive omission requiring action under *Franks*. *See id.* at 653–54.

Of course, Mr. Clark's interview was not transcribed when Detective Spivey applied for the warrant. Assuming he did not play the recording for the magistrate, he still did not run afoul of *Franks*. As the Court discussed at length in Part III(B) above, Mr. Clark's statements only supported the magistrate's eventual finding of probable cause. Meanwhile, Mr. Clark identifies only one statement that he suggests the magistrate needed to fairly assess whether a warrant should be issued: that he asked the detectives to leave and end his interview. But Mr. Clark first asked the detectives to leave after he entered his bedroom and began to destroy evidence. *See* crim. dkt. 39-2 at 40:15–18. In that context, his request that the officers leave does not undermine his earlier statements, which established probable cause, and its omission was not material or deceptive.

**F.   Abandonment of Judicial Role**

Mr. Clark next asserts that counsel erred by failing to raise challenges based on actions by the magistrate who signed the warrant. First, he contends that the magistrate reviewed the affidavit Detective Spivey prepared, then "assisted" him "in preparing an updated and expanded affidavit." Dkt. 1-1 at 7. Again, although Mr. Clark refers to exhibits, it is not clear if or where they are in the record. The Court finds no evidence to support this contention.

Second Mr. Clark argues that the magistrate "abandoned the judicial role and instead acted as an adjunct law enforcement officer" when he signed a warrant drafted by Detective Spivey— presumably, instead of reviewing the affidavit and then typing a warrant from scratch). *Id.* Mr. Clark borrows language from *Lo-Ji Sales v. New York*, 442 U.S. 319, 327 (1979), in which the magistrate who authorized a warrant *actually participated* in the search at issue. Mr. Clark has not provided a basis for the Court to suspect that the magistrate in his case did anything but thoroughly and neutrally review Detective Spivey's affidavit and approve a warrant. Certainly, he has not established that any reasonably competent defense attorney would have further developed that issue and moved to suppress evidence based on misconduct by the magistrate.

**G.     Time of Search**

Mr. Clark contends that counsel performed deficiently by failing to assert that Detective Spivey seized the devices before he obtained the warrant. He offers two theories.

First, Mr. Clark asserts that Detective Spivey seized all the devices before preparing his warrant application. Dkt. 1-1 at 8.[2] Detective Spivey acknowledged in his affidavit that two phones were "taken" from Mr. Clark and in his deposition that he secured the phones in an envelope in his squad car while typing his warrant application. Dkt. 14-1 at 35; crim. dkt. 39-3 at 3. But there is no evidence that he or any other officer accessed the contents of any device until the warrant issued. Mr. Clark's attorneys must have known that a motion to suppress on this theory would have been doomed, as the Fourth Amendment permits officers to confiscate evidence that an arrestee might reach and destroy and preserve it safely until a warrant can be obtained. *United States v. Tejada*, 524 F.3d 809, 811 (7th Cir. 2008) ("As an incident to a lawful arrest, the police can search . . . the area within his immediate control . . . in which there might be evidence of his

---

[2] Again, he cites exhibits that the Court is unable to locate. *Id.*

crime that he could destroy."); *see also United States v. Brixen*, 908 F.3d 276, 280–82 (7th Cir. 2018) ("Here, since the phone's content was not affirmatively accessed by law enforcement officers, no search occurred.").

Second, Mr. Clark notes, correctly, that the magistrate signed the warrant at 2:22 P.M. and Detective Spivey wrote "2:35 P.M." as the time of execution on the warrant return. Crim. dkt. 39-4 at 3–4. By his calculus, officers could not have searched the room so quickly, seized eight items thought to contain evidence, and logged the items on the return, proving that officers commenced the search without the warrant. But maybe Detective Spivey noted 2:35 as the time the search *began*, then logged the evidence after it concluded. Maybe Detective Spivey phoned the scene once the warrant was signed and officers began the search immediately. Regardless, the search was limited to one room, *see* dkt. 14-1 at 44, and officers were only looking for items that could contain child pornography and evidence of electronic communications. Moreover, there is no evidence that any of the items seized was hidden or secured. Considering all the facts, it was not unreasonable for Mr. Clark's attorneys to think that officers could have searched the residence and seized all eight items in only a few minutes after the warrant was signed. Mr. Clark has not carried his burden of demonstrating that a motion to suppress based on the times written on the warrant and return would have succeeded—much less that defense counsel's representation was objectively deficient because they failed to pursue such a motion.

## H. Bias by Presiding Judge

Finally, Mr. Clark asserts that the undersigned judge presided over his criminal case "with actual or apparent bias" because she has been "personally affected by a criminal sexual act." Dkt. 10. Mr. Clark points to no basis for this assertion except that the Court granted the United States three extensions of time to respond to his § 2255 motion. *See* dkts. 5, 7, 9. Mr. Clark

did not oppose the motions, and, in any event, "judicial rulings alone will almost never constitute a valid basis for disqualification." *Hoffman v. Caterpillar, Inc.*, 368 F.3d 709, 718 (7th Cir. 2004). Mr. Clark's undeveloped accusations of bias are not a basis for relief under § 2255.

### IV.  Conclusion

For the reasons explained in this Order, Ricky Clark is not entitled to relief on his § 2255 motion. His motion for relief pursuant to § 2255 is **DENIED** and this action is dismissed with prejudice. His additional motion requesting a *Franks* hearing, dkt. [36], is **denied** on the same grounds. Judgment consistent with this Entry shall now issue, and the Clerk shall **docket a copy of this Entry in No. 1:16-cr-00219-JMS-TAB-1.** The motion to vacate (crim. dkt. [116]) shall also be **terminated** in the underlying criminal action.

### V.  Denial of Certificate of Appealability

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition, rather, he must first request a certificate of appealability. *See Miller–El v. Cockrell*, 537 U.S. 322, 335 (2003); *Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014).  Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255 proceedings, and 28 U.S.C. § 2253(c), the Court finds that Mr. Clark has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). The Court therefore **denies** a certificate of appealability.

**IT IS SO ORDERED.**

Date: 7/17/2023

*[signature: Jane Magnus-Stinson]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

RICKY DEAN CLARK
15395-028
ATWATER - USP
ATWATER U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 019001
ATWATER, CA 95301

Kelsey Massa
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
kelsey.massa@usdoj.gov